UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                  Criminal Action No. 14-20610
                                               Honorable Victoria A. Roberts
                                               Magistrate Judge David R. Grand

v.

OTIS LEE MORGAN, JR.,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S AMENDED
MOTION TO SUPPRESS IDENTIFICATION TESTIMONY [20]**

**I.    RECOMMENDATION**

Before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) is Otis Lee Morgan, Jr.'s ("Morgan") motion to suppress identification testimony. [20]. The government filed a response [23], and, after the Court conducted an evidentiary hearing, the parties filed supplemental briefs [33, 35]. For the reasons discussed below, the Court RECOMMENDS that Morgan's motion [20] be DENIED.

**II.    REPORT**

    **A.    Background**

In August and September 2014, a lone assailant robbed three separate Family Dollar Stores at gunpoint in Detroit, Michigan. [21, Ex. A ¶¶ 7-9]. Eyewitnesses described the suspect as a 6'2"-6'3" African-American male with dreadlocks and facial hair weighing approximately 280-320 pounds. [*Id.*]. During each incident the suspect brandished what appeared to be a Tech-9 nine-millimeter handgun and stole cash along with store merchandise. [*Id.*]. With the aid of store video footage and the photo line-up identifications of several eyewitnesses, the FBI

eventually identified Morgan as the prime suspect. The eyewitnesses are all Family Dollar Store employees who worked at the two store locations that were robbed on September 4, 2014 and September 15, 2014, respectively. [20 at 1; 23 at 3-4]. Employees Paris Haliburton ("Haliburton") and Alexis Moore ("Moore") were witnesses to the September 4th robbery and employees Maelin Damm ("Damm") and Donovan Scott ("Scott") were witnesses to the September 15th robbery. [23 at 3-5]. After his arrest, and initially being charged in a criminal complaint, Morgan was indicted on charges for, among other things, interference with commerce by robbery, 18 U.S.C. § 1951(a), and using a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c). [9]. He now moves to suppress the photo lineup identifications as well as any prospective in-court identification testimony. [20 at 10-11].

With respect to the photo lineup, Morgan argues that the eyewitness identifications should be suppressed because: (1) the photo array is so unduly suggestive as to create "a very substantial likelihood of irreparable misidentification"; and (2) under the totality of the circumstances, the identifications are unreliable. Furthermore, Morgan asserts that any subsequent in-court identifications proffered by these eyewitnesses should be excluded as inherently tainted by the impermissible photo lineup.

### B. Analysis

The Sixth Circuit Court of Appeals has formulated a two-step test for determining whether pretrial identification testimony is admissible. "First, the defendant must show that the identification procedure was unduly suggestive." *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005). "If the defendant meets this burden, then the court must evaluate the reliability of the identification in the totality of the circumstances." *Id.* In this case, the photo lineup identifications should not be suppressed because: (1) the photo array is not unduly suggestive;

and (2) Morgan has not established that the remaining identifications are unreliable. *But see infra* at 7-8 fn. 2.

### 1. *Unduly Suggestive*

Under the unduly suggestive prong, the Court must inquire whether the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *United States v. Meyer*, 359 F.3d 820, 824 (6th Cir. 2004) (quotation omitted). To this end, the government proffered the original photo lineups provided to each of the four eyewitnesses. [Gov. Ex. 6a, 7, 12, 13]. All of the arrays are identical and comprise six photos of African-American males arranged in two equal rows of three. Morgan appears in the fifth photo (the middle photo of the bottom row). The individual depicted in the second photo is directly above him (the middle photo of the top row). On each array, Morgan's picture has been circled with the date and signature of the eyewitness appearing below his image.

Morgan maintains that the photo lineups themselves are unduly suggestive for the following reasons: (1) the individuals in the second, fourth and sixth photos are similar in appearance to each other, but bear no resemblance to him; (2) the individual in the first photo is barely visible due to the dark exposure of the picture; (3) the individuals in the second and sixth photos are light-skinned while he is dark-skinned; (4) except for the individual in the first photo, none of the other photos depict individuals with braids or dreadlocks; (5) Morgan's photo shows him biting his lip, which he construes as a display of pensiveness, anxiety, nervousness and fear; and (6) Morgan's photo is located at the center of the six person photo array, which impermissibly draws attention to him. [20 at 2-6]. Each of these contentions lack merit.

With respect to Morgan's first argument, he fails to specify which features of the individuals depicted in the second, fourth and sixth photos are dissimilar from his own, and the

Court cannot identify any dissimilarities so striking as to call into question the lineup's fairness. To the extent Morgan is asserting that these individuals look alike because they all have facial hair, the Court notes that in his photo, Morgan is also sporting a moustache with facial hair along his chin and jawline. Also, like Morgan, the identified men are all African-American males with closely-cropped hair. Thus, Morgan's argument is not a basis for finding the lineup was unduly suggestive. *See United States v. Washington*, 714 F.3d 962, 967 (6th Cir. 2013) (finding no likelihood of irreparable misidentification where photo array depicted five African-American men "at least four of whom appear to have some sort of facial hair."); *see also United States v. Reamey*, 132 F. App'x 613, 616 (6th Cir. 2005) (noting that the Sixth Circuit has held that "a photo array containing six photographs of black males, with facial hair and closely-cropped haircuts, contained sufficient similarities between the men such that it was not unduly suggestive.").

Second, contrary to Morgan's assertion, the first photo is not so dark as to substantially diminish any meaningful physical comparison between himself and the subject depicted in that photo. The Court notes that the facial features, hairstyle and shirt color of the individual depicted in the first photo are clearly discernable. *See United States v. Carter*, 410 F.3d 942, 949 (7th Cir. 2005) (holding that photos with a darker background than defendant's did not render the array unduly suggestive in part because they were "not so dark as to make [the other] subjects unrecognizable"). Moreover, Haliburton, Moore and Scott all testified that they could see whether the individual depicted in the first photo had braided hair. [Tr. 25, 59, 111-112].

Third, under circumstances similar to this case, the Sixth Circuit has found that differences in skin tone do not create "a very substantial likelihood of irreparable misidentification." *Washington*, 714 F.3d at 967. That reasoning is applicable here. While

4

Morgan's complexion is recognizably darker than some of the other depicted individuals, it is quite similar to the men in the first, third and fourth photos. Nor is there "a drastic difference between defendant's skin tone and the remaining photos." *Id.*

Fourth, although three of the four eyewitnesses described the perpetrator as having braids or dreadlocks prior to viewing the photo array, Morgan's hairstyle is barely noticeable from his photo, except for perhaps the braid curls behind the base of his jawline. Assuming that Morgan's hairstyle is discernible from his photo, Haliburton, Moore and Scott all noticed that the individual depicted in the first photo had braided hair as well. *See Dobson v. Walker*, 150 F. App'x 49, 50-51 (2d Cir. 2005) (denying an undue suggestiveness claim presented in a habeas corpus petition where petitioner argued that "that no more than two of the men in the lineup possessed long dreadlocks, and that long dreadlocks were a key feature identified by witnesses at the scene of the murder for which he was convicted."); *see also United States v. Green*, 543 F. App'x 266, 269 (3d Cir. 2013) (holding that photo array was not unduly suggestive since defendant was "not the only individual depicted with braids or a unique hairstyle."). In any event, Morgan's hair is just as closely cropped as the other depicted individuals, which, together with the other characteristics discussed herein, supports a finding that the lineup was not unduly suggestive. *See Reamey*, 132 F. App'x at 616 (photo array depicting six photographs of African-American males, all with facial hair and closely-cropped haircuts, was not unduly suggestive).

Fifth, Morgan's claim that he looks anxious and fearful in his photo, primarily because he is biting his lip, is a subjective characterization of what actually appears in the array. From an objective viewpoint, the photo depicts Morgan staring blankly at the camera with a slight overbite. Regardless, the Sixth Circuit has rejected similar arguments even where a suspect's facial expression was more pronounced. *See Reamey*, 132 F. App'x at 616-17 (holding that

5

photo array depicting the suspect grimacing was not unduly suggestive). More importantly, Haliburton, Moore and Scott all testified that Morgan's facial expressions did not influence their identification. [Tr. 28, 60, 112].

Finally, the position of Morgan's photo in the array did not impermissibly draw attention to him. Neither Haliburton, Moore nor Scott stated that the order of the photos highlighted Morgan as the suspect, and Morgan's photo and the individual depicted in the second photo are both centered in the middle of the array. [Tr. 28, 60, 112]. Moreover, the Sixth Circuit and several other appellate courts have permitted similar positioning in a photo array as a matter of law. *See Searcy v. Berghuis*, 549 F. App'x 357, 364-65 (6th Cir. 2013) (holding in the habeas context that photo array was not unduly suggestive where defendant's "photograph was in the middle of a six photograph array."); *see also United States v. Sanders*, 275 F. App'x 121, 124 (3d Cir. 2008) (finding defendant's argument that "his photo was in too prominent a position within the array" to be without merit where photo was displayed "in the upper left-hand corner of the array.").

The Seventh Circuit Court of Appeals voiced the most prescient objection to this argument when it was raised before that court. In *Carter*, 410 F.3d 942, the Seventh Circuit dismissed an undue suggestiveness claim where, as here, the defendant's photo was placed in the bottom-center position in an array containing six photos in two equal rows. The appellate court reasoned that the fifth position is not inherently more suggestive than the other positions because, if so, "then every photo array with a suspect pictured in the bottom-center position could be held unduly suggestive." *Carter*, 410 F.3d at 948-49. The Seventh Circuit ultimately declined to adopt "such a rule," and for the same reason, this Court recommends following suit.

6

*Id.* Consequently, the photo lineup identifications, and any prospective in-court identification testimony, should not be suppressed because the array is not unduly suggestive.[1]

### 2. *Reliability*

As noted above, a finding that a photo array is not unduly suggestive generally ends the inquiry and a motion to suppress may be denied entirely on this basis. *See United States v. Watson*, 540 F. App'x 512, 515 (6th Cir. 2013) ("If the defendant fails to show that the identification procedure was tainted by undue suggestiveness, our analysis ends."). Nonetheless, the Court will evaluate the reliability of the identifications for the sake of completeness.

Five factors are considered when determining the reliability of a pretrial identification: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness's degree of attention at the time of the observation; 3) the accuracy of the witness's prior description of the criminal; 4) the level of certainty of the witness when confronted by the criminal; and 5) the length of time between the crime and confrontation. *Ledbetter v. Edwards*, 35 F.3d 1062, 1071 (6th Cir. 1994). With the exception perhaps of Damm[2], the eyewitness' photo lineup identifications clearly satisfy each of these factors.

---

[1] In his supplemental brief, Morgan argues that Moore's identification is invalid because she testified that prior to showing her the photo lineup, the agents informed her that they believed one of the depicted individuals was the suspect. [33 at 1- 3 (citing Tr. 57)]. This contention is unavailing because there is no evidence that the agents "said or did anything to suggest" to Moore "which picture [she] should choose." *Gross v. Warden*, 426 F. App'x 349, 364 (6th Cir. 2011); *see also Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001) ("the suggestiveness of the identification procedure - questions whether the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection."). In addition, Moore testified to an unequivocal identification based on the photo array and her independent recollection, which belies an assertion that the agents' statement impacted her decision.

[2] Morgan argues in his supplemental brief that due to the equivocal nature of her identification, "The Court should preclude an attempted in court identification of Mr. Morgan by [Damm]." [33 at 2]. The government responded to that argument by citing *United States v. Perales*, 534 Fed. App'x 502, 507 (6th Cir. 2013) (emphasis added), for its holding that, "So long as the

First, Haliburton, Moore and Scott all testified that they had ample opportunity to view Morgan during the robberies. Haliburton attested that Morgan was directly standing two to three feet away from her and that she observed his face for approximately four minutes. [Tr. 10, 19] She also noted that the store was well lit and that Morgan did not wear anything to obscure his face. [Tr. 10]. Moore similarly stated that she had a direct view of Morgan's face and that he stood a short distance from her as he inquired about purchasing a DVD player. [Tr. 38-39]. She further testified that the store was well lit and that Morgan's face was not covered.[3] [Tr. 40]. And Scott recalled that he stood two feet from Morgan during the robbery and that he had no trouble seeing Morgan's face. [Tr. 89].

Second, the eyewitnesses exhibited a heightened degree of attention in large part due to their proximity to Morgan during the robberies. Both Haliburton and Moore accurately described Morgan's physical appearance and clothing. [Tr. 20, 56]. In addition, Moore provided a detailed description of the gun Morgan revealed during the robbery [Tr. 42], while Scott recounted the model of the firearm and the type of cigarettes Morgan requested from behind the

---

requirements of Rule 801(d)(1)(C) are met, *government agents* may testify about a prior statement of identification made by a witness who identified the defendant in a lineup or photospread, but forgets, or changes, his testimony at trial." [35 at 12 fn. 2]. Thus, the parties are talking past one another to some extent.

It is true that Damm testified at the evidentiary hearing that she was uncertain (both presently and when she made the lineup identification) about whether Morgan committed the robbery and that she did not even realize her store had been robbed until after the suspect left the scene. [Tr. 72, 79-80]. For instance, Damm testified that she could only recall that the suspect "was a big guy with a big coat and dreadlocks. That's it." [Tr. 72]. On cross-examination, she agreed that her lineup identification was merely her "best guess" and "not based on any certainty." [Tr. 79-80]. Yet, Damm did identify Morgan as the robbery suspect from the photo lineup, and one of the agents present during that identification testified at the evidentiary hearing that Damm did not express any uncertainty about her identification at that time. [Tr. 130-131]. Therefore, at least on the present record, this issue goes to the weight of the testimony, not its admissibility.

[3] Moore also informed the Court that she has 20/20 vision. [Tr. 40].

8

store counter. [Tr. 91, 103]. Third, Haliburton, Moore and Scott provided the authorities with accurate descriptions of the suspect that matched his likeness on the stores' video cameras. [Gov. Ex. 2, 4, 5]. Fourth, all three were very certain that Morgan committed the robberies. Scott testified that when he initially reviewed the lineup he "knew it was [Morgan]" [Tr. 101]; Moore stated that "I just honestly remembered his face" [Tr. 62]; and Haliburton attested that she "definitely [recognized] his eyes." [Tr. 17].

As for the last factor, the time between the robberies and the identifications, Haliburton and Moore identified Morgan a little more than two weeks after the September 4th robbery, while Donovan Scott identified him four days after the September 15th robbery. This duration is relatively short compared to Sixth Circuit precedent upholding substantially longer intervals between the crime and any subsequent identification. *See United States v. Washam*, 468 F. App'x 568, 571 (6th Cir. 2012) (affirming district court finding of reliability where there was a "lapse of two months between the robberies and the identifications"); *see also United States v. McComb*, 249 F. App'x 429, 441 (6th Cir. 2007) (holding that one-month gap is presumptively reliable). Thus, although the Court's determination that the photo array is not unduly suggestive is a sufficient basis to deny Morgan's instant motion, the identifications provided at least by Haliburton, Moore and Scott are independently reliable, and provide additional basis for denying the motion.

### III. CONCLUSION

For the aforementioned reasons, the Court RECOMMENDS that Morgan's amended motion to suppress identification testimony [20] be DENIED.

Dated: March 4, 2015  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

9

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

                                        s/Eddrey O. Butts
                                        EDDREY O. BUTTS
                                        Case Manager

Dated:  March 4, 2015